Jones *v.* Phelps.

---

JONES *vs.* PHELPS and others.

Even in cases where the defendant, in a suit to foreclose a mortgage, has not delayed the proceedings and increased the costs, by an improper defence, the necessary expenses of the suit, as well as of the master's sale, are to be deducted out of the proceeds of the mortgaged premises; thereby rendering the mortgagor, in effect, liable for those costs and expenses, if the proceeds of the sale are not sufficient to pay the whole debt for which he is personally liable. And where the mortgagor sets up an unfounded defence, and thus delays the proceedings, it is proper to charge him personally with the costs; instead of taking them out of the proceeds of the mortgaged premises, which in equity belong to the complainant or to other persons holding incumbrances upon the premises.

Where two mortgages, upon the premises, are recorded at the same time, and each mortgagee is cognizant of the giving of the other mortgage, at the time that he takes his own, the recording acts have no application to the case, in respect to the question of priority.

Although two mortgages upon the same premises, given to different persons, bear the same date, and are acknowledged at the same time, if it appears that it was the agreement and intention of all parties that one of the mortgages should have

Jones *v.* Phelps.

a preference over the other, so as to be a prior lien upon the premises, the law, for the purpose of carrying into effect that intention, presumes that the mortgage which was intended to be preferred, was delivered first.

THIS was an appeal by Lyman Phelps, one of the defendants, from a part of the decree of the vice chancellor of the seventh circuit, in this cause. In July, 1841, Phelps, the appellant, gave a mortgage to Jones, the complainant, for $1,000, and interest. In April, 1842, Phelps conveyed the mortgaged premises to J. K. Crandall, subject to this mortgage; and Crandall agreed to pay the mortgage, as a part of the consideration of the conveyance to him. On the same day Crandall executed two mortgages upon the premises; one to A. Hill, for $1000, payable in two and three years, with annual interest, and another to Phelps, for $651, payable in four years, with interest. Both of these mortgages were given in part payment of the purchase money of the premises, and were received and entered in the record by the county clerk as having been recorded at the same time. But the mortgage to Hill was received in part payment of a debt due to him from Phelps; who, at or previous to the delivery of the mortgages, agreed with Hill that the mortgage to the latter should have priority over the other, so as to have a preference in payment as a prior lien upon the mortgaged premises. Hill subsequently assigned his mortgage to Jones, the mortgagee in the original mortgage given by Phelps. In 1845, the complainant filed his bill in this cause, to foreclose his original mortgage as well as the one assigned to him by Hill. He also stated in his bill the agreement between Hill and Phelps, relative to the priority of the last mentioned mortgage over the mortgage to Phelps of the same date. And Crandall and Phelps, the mortgagors in the two mortgages of the complainant, and several other persons, were made defendants. The bill was taken as confessed as to all the defendants except Phelps. He put in an answer, without oath, denying the agreement stated in the bill relative to the priority of the Hill mortgage. A replication to that answer was filed, and the cause was heard before the vice chancellor

upon pleadings and proofs. The vice chancellor decided that the mortgage assigned to the complainant, by Hill, was entitled to a priority in payment over that of the same date given to Phelps. And he directed a reference to a master to compute the amount due to the complainant upon his two mortgages. Upon the coming in of the master's report, the vice chancellor made a final decree of foreclosure, and for the sale of the premises to satisfy the amount reported due upon those two mortgages, with the costs of suit. The decree further directed that in case the premises should not sell for enough to pay the amount reported due, Crandall, who was primarily liable for the payment of both mortgages, should pay the amount of the deficiency; and if satisfaction thereof could not be had by execution against him, then such deficiency, or so much thereof as could not be collected of Crandall, should be paid by Phelps the appellant, who was personally liable for $1000, and interest thereon from the second day of July, 1841.

The defendant Phelps appealed from so much of the decree as made him contingently liable to the complainant for any part of the sum reported due by the master, or the interest thereon, or of any part of the costs of the suit in case the mortgaged premises should sell for enough to pay the first mortgage with the interest due thereon.

*L. Birdseye*, for the appellant. 1. The deed by Phelps, dated April 1, 1842, conveying the mortgaged premises to Crandall, one of the defendants, subject to the payment by Crandall of the mortgage of July 2, 1841, from Phelps to Jones, rendered the mortgaged premises the primary fund for the payment of that mortgage; and Phelps cannot be held personally liable, in equity, to pay any part of that debt and the costs, until after that fund has been exhausted. (*See* 7 *Paige*, 591; *Id.* 248, 465. *See also Tice* v. *Annin*, 2 *John. Ch. Rep.* 128; *Ferris* v. *Crawford*, 2 *Denio*, 595.) It appears by the pleadings and proofs that Jones took the assignment of his second mortgage, with a knowledge of such conveyance, and of the terms of it. He sets up no pretence of having purchased that

Jones *v.* Phelps.

mortgage without notice of that deed, and of the terms of it. (*See Harris* v. *Ely,* 7 *Paige,* 421.) Hill, the mortgagee, was present when the deed was executed, and is chargeable with notice of its terms; and the complainant deriving his title to the mortgage from Hill, is chargeable with all the equities to which the instrument was subject in Hill's hands. The complainant was also present at the giving of that mortgage. 2. The decree of the vice chancellor is inequitable and unjust, in requiring the appellant to pay off the bond and mortgage of Crandall, as it in effect does, in case it is not collected of Crandall. 3. No issue had been taken, or raised by the pleadings, as to the personal liability of Phelps to pay off the bond and mortgage of Crandall ; and no decree can be founded upon evidence in relation to matters which were not in issue between the parties. (2 *Paige,* 61. 9 *Peters' Rep.* 483. 10 *Id.* 177.) 4. There was no evidence given of any agreement or promise made by Phelps to pay the bond and mortgage of Crandall, or any part of it. 5. If the bill can be construed to claim a joint judgment against different persons, for the aggregate amount of their several contracts, it was radically wrong, and the decree founded on it, and ratifying such claim, should be reversed on appeal. (2 *Mad. Ch.* 235. *Mitf. Pl.* 181.) If that be not the fair construction of the bill, then the decree is erroneous, and should be reversed, for adjudging a joint judgment against two defendants, for the aggregate amount of their several contracts, when no such claim had been made by the bill, and when all the facts established by the pleadings and proofs had demonstrated that the appellant was not personally liable to pay off the debt of Crandall, either jointly with him, or in succession after his failure.

*W. H. Shankland,* for the respondent. I. The decree does not charge the appellant with the payment of any deficiency, unless the property mortgaged fails to sell for sufficient to pay the mortgage for $1000 executed by the appellant Phelps. II. But if the decree will bear a different construction, then the respondent contends that it is right, for the following reasons:

1. Because the defendant Phelps put in a false answer to the bill, and unnecessarily enhanced the costs to the amount of $243,29 ; creating a deficit to that amount, which ought to have gone towards the extinguishment of the debt. And the effect of the decree is to charge him personally with the payment of those costs. 2. Because, when Phelps bought Hill's farm, he agreed to transfer to Hill, in part payment thereof, a bond and mortgage on the farm which he (Phelps) sold to Crandall. It is the fair and equitable import of that contract, that there should exist no prior liens on the farm sold to Crandall, to exhaust the value of it, so as to render the mortgage agreed to be assigned to Hill uncollectable ; and yet it turns out that Phelps had previous to that time executed a thousand dollar mortgage on the same premises to Jones, by means of which the Hill mortgage is in danger of being rendered worthless, because of the large amount due on the first mortgage to Jones. It was just, therefore, that the decree should provide against such a contingency ; as both of the complainant's mortgages were given for Phelps' own proper debt, and the Hill mortgage is in danger of not being satisfied out of the avails of the sale, in consequence of Phelps' default, in not paying his own first mortgage to Jones. III. If the decree is modified, it should make provision for Phelps' paying the costs in the court below, and the costs on the appeal. IV. Jones, as the assignee of Hill, is entitled to all his equitable rights and remedies, to enforce the payment of the bond and mortgage in question.

THE CHANCELLOR. The complainant made a mistake in drawing up the decree. For, upon a fair construction of its language, the appellant is made contingently liable for the amount of the bond and mortgage given by Crandall, as well as for the whole costs of the suit. He is clearly not liable for any part of the amount due upon that bond and mortgage. And if this part of the decree had been objected to in the court below, there is no question that it would have been properly settled before it was entered ; and thus have saved the delay and expense of an appeal. Although this part of the decree

Jones *v.* Phelps.

must be modified, therefore, it ought not to excuse the appellant from the payment of costs. For his solicitor should have proposed amendments, and have had the decree corrected in this respect, before it was entered. Or, if it was entered without serving a draft thereof upon him, he should have moved the vice chancellor to have it amended. Again, the appeal is too broad; as it proceeds upon the supposition that the appellant is not personally liable to the complainant for any deficiency, if the mortgaged premises should sell for enough to pay the first mortgage and interest; although the proceeds of the sale should not be enough to pay the costs of the suit also. Even in those cases where the defendant has not delayed the proceedings, and increased the costs, by an improper defence, the necessary expenses of the suit as well as of the master's sale are deducted out of the proceeds of the mortgaged premises; thereby rendering the mortgagor, in effect, liable for those costs and expenses, if the proceeds of the sale are not sufficient to pay the whole debt for which he is personally liable, in addition thereto. In this case, however, it would be wholly inequitable to take those costs which were made by the appellant's improper defence, out of the proceeds of the sale, if the proceeds are not sufficient to pay both mortgages. Besides, the defence put in by the appellant delayed the sale of the premises for a long time; as a decree might have been obtained in the spring of 1845, if he had not put in an answer, no part of which was sustained by the proofs in the cause. In the meantime the interest has been running on both mortgages; which would have been stopped, by the application of the proceeds of the mortgaged premises to the payment of the complainant's demand, if a sale had not been delayed by the defendant's litigation. In such a case, as the costs are in the discretion of the court, it is proper to charge them personally on the defendant who has caused them to be made; instead of taking them out of the proceeds of the mortgaged premises, which in equity belong to the complainant, or to others who hold incumbrances upon the premises.

In the present case, although the question as to the priority

of the Hill mortgage over that given to the defendant, was dis-
posed of by the interlocutory decree, which has not been
appealed from, I have looked into the pleadings and proofs, in
reference to this question of costs. And I find that the appel-
lant was clearly in the wrong in respect to the question of
priority. Both mortgages being recorded at the same time,
and each mortgagee being cognizant of the giving of the other
mortgage when he took his own, the recording acts had no
application to the case. And the evidence clearly establishes
the fact that it was the understanding, agreement, and inten-
tion of the parties, that the mortgage to Hill should have
a preference over that which was given to Phelps, so as to be
a prior lien upon the premises. Although they have the same
date and were acknowledged at the same time, the law, for
the purpose of carrying into effect the intention of the parties,
will presume the mortgage to Hill to have been delivered before
the delivery of the other mortgage of the same date to Phelps.
The appellant's defence, therefore, was not only invalid but
wholly unconscientious.

The decree must be modified so as to direct the master to
ascertain the amount of costs to which the complainant would
have been entitled, upon an ordinary decree, on a bill taken as
confessed against all of the defendants; and to pay that
amount, and also the costs and expenses of the sale, out of the
proceeds of the mortgaged premises in the first place. The
amount due on the second of January, 1846, the date of the
master's report, upon the bond and mortgage given by the
appellant, must be computed and stated in the decree; and
the master who makes the sale must be directed next to pay
that amount, with interest from the second of January, 1846,
out of the proceeds of such sale. And if there is more than
sufficient for those purposes, he must apply the residue of such
proceeds, or so much thereof as may be necessary for that pur-
pose, to pay the amount due on the complainant's second mort-
gage, with interest thereon from the last mentioned day; and
he must bring the surplus, if any, into court for the benefit of
whoever may be entitled to it, and subject to the further order

Jones *v.* Phelps.

of the court. If there is not sufficient, after paying the costs and expenses aforesaid, to pay the amount due upon the complainant's first bond and mortgage, the master must report the amount of that deficiency, and the sum then due upon the complainant's second bond and mortgage, separately. And the defendant Crandall, who is primarily liable for the amount due on both of those bonds and mortgages, must be decreed to pay such deficiency, with interest thereon from the date of such report. If it cannot be collected upon execution against him, then, upon the return of the execution against his property unsatisfied, the defendant Phelps must pay the amount of the deficiency reported due upon the complainant's first bond and mortgage, with interest; or so much thereof as shall not have been collected by execution from the defendant Crandall. The master must also, in his report, state the amount due upon the complainant's taxed bill of costs, after deducting the portion of such costs which the master is directed to pay out of the proceeds of the sale; and the defendant Phelps must pay the amount so reported due for such costs, with interest thereon from the date of the master's report. In case the proceeds of the sale shall be sufficient to pay the amount due upon the complainant's first bond and mortgage, together with that part of the costs and expenses which are directed to be paid out of such proceeds, but not sufficient to pay the amount due upon the complainant's second bond and mortgage, the master must report the amount of such deficiency; and the defendant Crandall must be directed to pay it personally.

The appellant must also pay the respondent's costs upon this appeal, to be taxed.