NATHAN LITTAUER, Respondent, *v.* MARCUS GOLDMAN, Appellant.

Where the holder of a promissory note, which is tainted with usury, transfers the same for a valuable consideration without indorsement and without representation as to legality, in the absence of knowledge on his

part at the time of the transfer of the defect, no warranty against it will be implied, and an action cannot be sustained against him for loss sustained by the purchaser by reason of the defect; a *scienter* is essential to establish an implied warranty as to the validity of the note.

It *seems*, that upon such a transfer, there is only an implied warranty of title, and that the instrument is genuine.

An action cannot be maintained to recover back the purchase-money paid, on the ground of a total failure of consideration.

*Littauer* v. *Goldman* (9 Hun, 231), reversed.

*Webb* v. *Odell* (49 N. Y., 583); *Ross* v. *Terry* (63 id., 13); *Fake* v. *Smith* (7 Abb. [N. S.], 106); *Whitney* v. *Nat. Bk.* (45 N. Y., 305); *Bell* v. *Dagg* (60 id., 530); *Gemport* v. *Bartlett* (75 Eng. C. L. R., 849); *Ross* v. *Mather* (47 Barb., 582); *Williamson* v. *Allison* (2 Cart, 446); *Stone* v. *Frost* (61 N. Y., 614), distinguished.

*Marvin* v. *Jarvis* (20 N. Y., 226), distinguished and limited.

(Argued January 25, 1878; decided February 19, 1878.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order affirming an order of Special Term, which overruled a demurrer to the complaint herein. (Reported below, 9 Hun, 231.)

The complaint alleged, in substance, that defendant sold and transferred by delivery to plaintiff, for valuable consideration, a promissory note, which was void for usury in its inception; that plaintiff sued the makers, who interposed the defense of usury; that plaintiff notified defendant of the bringing of the action and of the defense set up, and requested him to take charge of the prosecution of said action and that he would be held liable in case the defense was sustained; that plaintiff was beaten in said action and a judgment for costs rendered against him. It was not alleged that defendant had knowledge of the defect or that any express representation or guaranty was made. The defendant demurred that the complaint did not state facts sufficient to constitute a cause of action.

*E. H. Benn*, for appellant. A warranty by defendant that the note was not usurious could not be implied. (Story on Prom. Notes, § 118; 2 Pars. on Bills and Notes, 42–44;

Byles on Bills, 118 ; Story on Sales [4th ed.], 444, § 367 ; *Lambert* v. *Heath*, 15 M. & W., 485 ; *Hall* v. *Condon*, 26 L. J. [C. P.], 138; *Harguos* v. *Stone*, 5 N. Y., 82; *Curtis* v. *Brooks*, 37 Barb., 478.) Deceit is the basis of all implied warranties. *Hoe* v. *Sanborn*, 21 N. Y., 552, 555 ; *Delaware Bank* v. *Jarvis*, 20 id., 226; *Fake* v. *Smith*, 7 Abb. [N. S.], 106 ; *Ross* v. *Terry*, 63 N. Y., 613 ; *Webber* v. *Odell*, 49 id., 583 ; *Hartley* v. *Harrison*, 24 id., 170 ; *Bullard* v. *Raynor*, 30 id., 197 ; *Berden* v. *Sedgwick*, 44 id., 630, 631 ; *Otis* v. *Cullum*, 2 Otto, 447.)

*B. W. Huntington*, for respondent. The liability of the seller of the note rested upon an implied warranty. (*Del. Bank* v. *Jarvis*, 20 N. Y., 228 ; *Loeschigh* v. *Blun*, 1 Daly, 49 ; *Whitney* v. *Nat. Bank*, 45 N. Y., 305 ; *Bell* v. *Dagg*, 60 id., 530.) The *scienter* of the seller was not material. (20 N. Y., 228 ; *Evertson* v. *Miles*, 6 J. R., 138 ; *Williamson* v. *Allison*, 2 East, 446 ; *Ross* v. *Mather*, 47 Barb., 585.) As the law will presume defendant to have been the owner of the note in suit, and that plaintiff acted on such presumption, he was entitled to get his money back without proof of warranty or fraud. (*Stone* v. *Frost*, 61 N. Y., 614 ; *Meech* v. *Stoner*, 19 id., 30.)

MILLER, J. The right of the plaintiff to maintain this action rests upon the ground that the note in question which was sold and transferred by the defendant to the plaintiff was invalid and void, by reason of its original usurious consideration. It is alleged that, being in violation of the statute against usury, it was no note, and by implication of law the defendant did warrant and undertake that the same was not usurious or illegal, but a valid and legal note. The complaint does not allege that the defendant had any knowledge of the usury or was a party to the same, but states that the seller by the act of transfer for a valuable consideration, impliedly warranted that the paper was genuine and all that it purports to be upon its face, and incurred an obligation

by the sale to make the paper good, although he did not indorse or guaranty the same. The question whether an action will lie for the loss sustained by the plaintiff by reason of the note being usurious, and the recovery of the amount thereof thereby defeated, has never arisen under the precise circumstances presented in this case, and demands an examination of the principle applicable to the contract entered into upon the sale of paper of this description, and of the authorities bearing upon the subject. The rule is well-settled that generally one who transfers paper by delivery only, incurs none of the liabilities which attach to an indorser, for the reason that the irresistible inference is, that if he transfers it and it is received without his indorsement, that such liabilities did not enter into the bargain or the intention of the parties. This rule, however, is not without exception, and the transferrer of notes or bills by delivery warrants the genuineness of the signatures, and that the title is what it purports to be. If the paper is forged the transferee is liable upon the original consideration which has never been extinguished by the sale. (2 Parsons on Contracts, 37, 38.) So, also, it is laid down by the same author that the vendor without indorsement warrants that the paper is of the kind and description that it purports to be, and there is an implied warranty that the parties to the paper are under no incapacity to contract, as from infancy or marriage or other disability, and the assignment of a bill or note for a valuable consideration raises an implied warranty that the assignor has done nothing, and will do nothing to prevent the assignee from collecting it. The reason given as to forged paper is that it is nothing, and the one who has transferred it has transferred nothing, and is therefore liable. (Id., 39, 40.) The question whether paper tainted with usury, which is transferred by the holder without knowledge of this defect, can be regarded as within the principle of the exceptions stated, is not free from difficulty, and at first view there appears to be some ground for claiming that a note made in violation of a statute which declares usury to be a misde-

meanor, and that all paper of this kind shall be void, should stand on the same footing as forged or other paper, which is excepted from the general rule.

Although the reported cases do not decide the exact point, an examination of some of the leading authorities tends to throw some light on the subject. In *Marvin, Prest. of the Delaware Bank,* v. *Jarvis* (20 N. Y., 226), a note was transferred to the plaintiff which had been taken at a usurious premium by the defendant and the avails received by him. Upon being sued, the defense of usury was interposed, which was successful, and the bank sued the defendant to recover the amount and costs of prosecuting the note. It was held that one who transfers a chose in action impliedly warrants that there is no legal defense to its collection arising out of his own connection with its origin, and that the party accepting the transfer is at liberty to act upon the implied assertion of the validity of the paper, and to bring an action for its collection; and when defeated to recover the costs incurred by him from his assignor. The opinion lays down the rule that the authorities hold the doctrine in general terms that the vendee of a chose in action, in the absence of express stipulations, impliedly warrants its legal soundness and validity, and that exceptions do not exist when the invalidity of the debt or security sold arises out of the vendor's dealing in relation to it. It is also said that the act of transferring the note was the strongest possible assertion that no legal defense existed. The defendant in the case cited had knowledge of the usury, which was not the fact here, and hence it differs from the case at bar, and is not decisive of the question; but the opinion is very strong in upholding the general doctrine referred to where there is a radical defect in the note.

In *Webb* v. *Odell* (49 N. Y., 583), a recovery for the purchase-price was upheld where notes were sold for less than their face, upon a representation that they were business paper, when, in fact, they were accommodation notes, and thus usurious and void in the hands of the vendee. The decision is

placed upon the ground that the thing sold differed in substance from what the purchaser was led by the vendee to believe he was buying, and the difference was so substantial and essential in its character as to amount to a failure of consideration. The representation that the notes were business paper was an important fact, and hence the decision does not exactly cover a case where the party transferring had no knowledge of the true character of the paper. In *Ross* v. *Terry* (63 N. Y., 613), the defendant sold a bond and mortgage to the plaintiff, which was usurious and void. The defendant was personally concerned in the making of them, and in the unlawful acts which vitiated them, and it was held that there was an implied warranty of the validity of the securities. It will be observed that here, also, the defendant had knowledge of the usury, and hence the case is not directly in point. In *Take* v. *Smith* (7 Abb. [N. S.], 106), the defendants, who sold a usurious note to the plaintiff, were held liable upon an implied warranty by defendants, on the sale of the note, that there was no legal defense to an action upon it, but it appeared that the defendants were privy to the consideration of the note, and the facts and circumstances under which it was given and transferred.

The foregoing constitute the principal cases in this State which have a direct bearing upon the question arising where the notes transferred were tainted with usury. In the cases of *Whitney* v. *National Bank of Potsdam* (45 N. Y., 305), and *Bell* v. *Dugg* (60 N. Y., 530), the notes were forged, and the implied warranty related to the genuineness of the signature, which, as we have seen, is expressly provided for in the elementary works. In the case of *Gemport* v. *Bartlett* (75 Eng. C. L. R., 849), an unstamped bill of exchange, indorsed in blank purporting to be a foreign bill, was sold without recourse by the holder. It was shown to have been drawn in the country where the parties resided, and was for that reason unavailable for want of a stamp, and it was held that the article did not answer the description of that which was sold, viz.: a foreign bill, and hence the purchaser could

recover back the price from the vendor. This case sustains the doctrine that the money might be recovered as paid under a mistake of fact, which seems to have been a mutual mistake, and the whole case appears to have been disposed of upon the ground that the article did not answer the description. There is some analogy between the case last cited and the one at bar, for here the note on its face purported to be valid, and was only shown not to be by proof of extrinsic facts, which affected the original consideration. The difference however is, that in the case last cited the purchaser contracted for a foreign bill which required no stamp, and did not receive what he was entitled to, while here there was a secret defect unknown to both parties, and not provided for; and as was said by the Lord Chief Justice in *Gemport* v. *Bartlett:* "If it really had been a foreign bill, any secret defect would have been at the risk of the purchaser." From the authorities to which we have adverted, it appears that in every case where usury was involved there was knowledge of its existence on the part of the person who held and transferred the note. It is true that in *Delaware Bank* v. *Jarvis* (*supra*), it is remarked by the judge that he does not consider it a material circumstance that the defendant had knowledge that the note had not been negotiated prior to the time when it was received, and as we have seen lays down the broad rule that, in any case where there is not an express agreement, the vendor of a chose in action warrants not only the title, but the soundness and validity of the note. The opinion of the learned judge is entitled to great respect; but, as the facts show it was not necessary to go to this extent to sustain the decision made; it is not entirely controling.

It is of grave importance whether a *scienter* is material for the purpose of upholding an implied warranty in a case of this kind. In *Hoe* v. *Sanborn* (21 N. Y., 552), SELDEN, J., lays down the rule, "that whenever an article sold has some latent defect, which is known to the seller, and not to the purchaser, the former is liable for this defect if he.

fails to discover his knowledge on the subject at the time of the sale." He proceeds to state that where knowledge is proved by direct evidence, the responsibility rests upon the ground of fraud; but where the probability of knowledge is so strong that courts will presume its existence without proof, the vendor is held responsible upon an implied warranty; and the difference between the two cases is, that in the one, the *scienter* is actually proved; in the other it is presumed. A *scienter* is, therefore, essential to establish an implied warranty; and as we have seen, the cases to which we have referred all show knowledge on the part of the vendor. The cases which are cited to sustain the doctrine that the *scienter* is immaterial where there is a warranty either express or implied do not go to that extent.

In *Evertson* v. *Miles* (6 J. R., 138), the action was assumpsit for a breach of warranty on the sale of a horse, and the judge upon the trial rejected evidence to show that the representations proved were false, and decided that the plaintiff must show an express warranty, otherwise they could not recover upon the declaration. This ruling was sustained by the higher court, and it was said that there is no case which permits a plaintiff to establish deceit and fraud, when he declares only in assumpsit on a warranty express or implied. The question presented related to the form of the complaint, and has no application to the case now considered where the point is, what constitutes an implied warranty upon the sale of a chose in action. In *Ross* v. *Mather* (47 Barb., 582), the action was for a false warranty in the sale of a horse, and it was held it was unnecessary for the plaintiff to make proof of the *scienter*, but proof of the warranty was sufficient, and whether the defendant knew the warranty was false at the time of making it was of no importance. The warranty in the case cited was express and of course when proved made out a case. Here the question is, where there is no express warranty and the evidence does not show knowledge or deceit, whether any implied warranty is made out and the cases cited furnish no light

on that subject. In *Williamson* v. *Allison* (2 East, 446), the warranty was proved and the same rule was laid down. The reason of the rule was stated by Lord Ellenborough to be that the plaintiff was equally entitled to recover on the same proof, by striking out the whole averment of a *scienter*. This is apparent, and hence the rule last stated has no application to a case where the warranty is necessarily dependent upon proof of knowledge. Without proof of such knowledge no warranty is made out, for there is only the naked fact that the plaintiff purchased the notes, and as we have seen there is no reported case which holds that where such purchase is made without actual knowledge by the defendant that an implied warranty is established.

It is true that some of the cases to which we have referred, hold that express representations are not necessary to establish a case and fix a liability, but in all of those where the notes were affected by usury the evidence showed that such fact was known to the defendant. The case of a forged instrument, as we have seen, rests upon a different principle, viz.: That the note is no note, and hence none of the cases cited aid the plaintiff. The doctrine that an action can be maintained to recover back the purchase-price paid under a contract of sale of personal property, without proof of warranty or fraud, where, upon delivery of the property, it proves utterly valueless, and where an offer to return has been made and refused, which is held in *Stone* v. *Frost* (61 N. Y., 614), is scarcely applicable to negotiable paper which must be governed by entirely a different rule. In the latter case, where the transfer is made without indorsement, it is not unreasonable to suppose that certain liabilities did not enter into the consideration of the transfer, and had it been so intended some agreement would have been made in regard to the same.

The authorities cited in Parsons on Contracts (*supra*), in the note to uphold the rule stated that there is an implied warranty that the parties are under no incapacity to contract, do not sustain the doctrine laid down in the text. In *Lobdell* v. *Baker* (1 Met., 193; id., 469), the note was

indorsed by a minor, and the action was for deceit in procuring the minor to indorse it, and then putting it in circulation. Knowledge was a necessary ingredient of the plaintiff's action, and hence the case cited is not in point. In *Thrall* v. *Newell* (19 Vt., 202), where the note was invalid, as one of the signers of the same was insane, and had successfully defended on that ground, the case turned somewhat upon the construction to be given to a written assignment to the plaintiff, which it was held must be construed as an express warranty on the part of the defendant that it was a valid note, and that the signers were of sufficient capacity to contract, and although, in the opinion, the judge was inclined to think that there was a warranty implied by law from the sale of the note, that question was not in the case; nor do the text-books sustain the doctrine as stated in Parsons in reference to incapacity.

In Story on Promissory Notes (§ 118), it is said that the holder warrants by implication, unless otherwise agreed that he is the lawful holder and has title; that the instrument is genuine, and not forged or fictitious; that he has no knowledge of facts which prove the instrument, if originally valid, to be worthless, either by a failure of the maker, or by its being paid, or otherwise to have become void or defunct.

In Chitty on Bills (p. 245), it is laid down that where a person obtains money on a note, and it turns out to be forged, he is liable to refund the money to the party from whom he received it, on the ground that there is, in general, an *implied warranty* that the instrument is *genuine*. Again, at page 247, it is said : "If a man assign a bill for any sufficient consideration, *knowing it to be of no value*, and the assignee be not aware of the fact, the former would, in all cases be compellable to repay the money he had received." It is knowledge of the defect which renders the party liable for a note which is of no value, and this rule applies to a note which is tainted with usury. In *Ferns* v. *Harrison* (3 D. & E., 757), the same rule was laid down. In the case last cited the holder of a bill of exchange desired to get it

discounted, but refused to indorse it, and delivered it to
another party, who passed it off for that purpose to a third
party, informing him to whom it belonged, and such last-
named party disposed of it by indorsing it, being prevailed
upon to do so by the person who delivered it to him.
Although the original owner afterward promised to pay
the bill, it was held that such promise cannot support an
action brought against him by the indorser. Lord Kenyon
says : " It is extremely clear that if the holder of a bill
sends it to market without indorsing his name, neither moral-
ity nor the laws of this country will compel him to refund
the money for which he sold it, if he did not know at the
time that it was not a good bill. If he knew the bill to be
bad, it would be like sending out a counterfeit into circula-
tion to impose upon the world instead of current coin. In
this case, if the defendant had known the bill to be bad,
there is no doubt that he would have been obliged to refund
the money." (See, also, Byles on Bills, 158, 159; Story
on Bills, § 111; Edwards on Bills, 191.)

In *Lambert* v. *Heath* (15 M. & W., 485), the defendant,
a share broker, bought for the plaintiff script certificates,
which were sold in the share market, at a premium, as
" Kentish Coast Railway Script," and were signed by the
secretary of the railway company. The genuineness of the
script was denied afterwards by the directors, who alleged
that it was issued without authority. In an action brought
to recover back the price on the ground that it was not
genuine, it was held that it was a proper question for the
jury whether what the defendant intended to buy was that
which was sold in the market as such script. Alderson,
B., said: " It appears that it was signed by the secretary
of the company; and if this was the only Kentish railway
script in the market, as appears to have been the case, and
one person chooses to sell and another to buy that, then the
latter has got all he contracted to buy." The script was of
no value, because it was not genuine, as the note here is
worthless, by reason of the usury. The same principle is

applicable in both cases, and the plaintiff cannot recovers unles it is made to appear that the plaintiff intended to purchase and the defendant to sell the note without the alleged defect.

In *Hall* v. *Conder* (26 L. J. [C. P.], 138), an action was brought to recover money agreed to be paid upon the sale of an interest in a patent right. One of the pleas interposed to the declaration was, that the invention was not new in England, and was worthless, and the plaintiff was not the first inventor. To that there was a demurrer, and it was held that there was in the agreement no warranty, express or implied, that the patent was indefeasible, and no fraud being alleged, and the defendant having the same means of knowledge as to the novelty and value of the patent as the plaintiff, the plea was bad. The rule is laid down by CASWELL, J., that on the sale of a known ascertained article, there is no implied warranty of its quality.

The examination we have made of the question shows that the law in regard to the transfer of negotiable bills of exchange and promissory notes, as laid down for a century or more, only excepts two cases as coming within the doctrine of an implied warranty, viz.: a warranty of title, and that the instrument is genuine and not forged. There is no precedent and not a single reported case in the books in favor of the doctrine that where a promissory note is infected with usury, and that fact is unknown to the party who transferred it, that is an implied warranty of the validity of the note. To uphold such a doctrine would be an innovation upon a settled principle of law and the establishing of a new and different rule from that which has governed the sale and transfer of this species of property for a long period of time. It is at least exceedingly doubtful whether it would be expedient to inaugurate a new and questionable rule of conduct for the government of transactions of this description, even if the law permitted it to be done. The hardship which may fall upon the plaintiff by the purchase of the paper in question may operate quite as harshly on the

defendant, as the assumption is that he had no knowledge of the inherent vice which affected the note. It is difficult to apply the rules of law in all cases with exact justice. In fact, if the rule be as the authorities hold, and as should be if it is not well understood, that the purchaser of paper of this description takes it at his own hazard and risk without any warranty, unless he chooses to require such an indemnity and makes it a part of the contract, no serious inconvenience or injury can follow. The doctrine of *caveat emptor* applies, and the fault is with the person who fails to exact a warranty, if it turns out that he has been mistaken or has unfortunately made an unprofitable or a bad bargain. Neither party has any just ground of complaint in such a case.

The result is that the judgment was wrong and must be reversed, with leave to the plaintiff to amend his complaint upon the usual terms in such cases.

All concur, except EARL, J., dissenting.

Judgment accordingly.