## In re WRIGHT, Petitioner.

*(District Court, S. D. New York.   May 26, 1883.)*

1. VESSEL—PROCEEDS OF SALE—LIEN, WHEN LOST.
    Where a vessel is sold and the proceeds paid into the registry, the shares of the different owners of the surplus are equitably liable *pro rata* for the payment of any additional liens upon it.

2. SAME—EQUITABLE RELEASE.
    Where a person, having such liens, purposely delays filing his claim against the remnants until the shares of some of the owners have been drawn out, and then files it in order to charge the whole upon the remaining shares, *held*, that such withholding is equivalent to a release of the shares withdrawn and a discharge of the lien *pro tanto;* the remaining shares are only chargeable with their due proportion of the claim filed.

3. SAME—COSTS—HOW CHARGED.
    The costs of the prevailing party are ordinarily treated as a legal incident of the debt, and, like the debt, paid out of the fund, though subsequent lienors may be prejudiced thereby; but where the action is unreasonably defended, costs in admiralty, as in equity, may, in the discretion of the court, be imposed personally on the litigating parties.

4. SAME—PART OWNERS.
    Part owners of vessels have a right to litigate a doubtful claim against the vessel. When the defense is reasonable, *bona fide,* and in part successful, the libelant's costs should be imposed, not upon those defending personally, but upon the proceeds of the vessel.

In Admiralty.

*Beebe, Wilcox & Hobbs,* for petitioner.

*Gibson, Whiting & Parkin,* for respondents.

BROWN, J.   Upon the sale under the decree, in the case of *The J. C. Williams,* 15 FED. REP. 558, there was a surplus of $8,946.43 in the registry after paying the amounts decreed to the libelant.   Wright, as receiver of Brett, Son & Co., held a mortgage upon five-eighths of the vessel sold, and had previously presented and proved his claim to that proportion of the surplus, which was less than the mortgage debt, and the owners of the remaining three-eighths of the vessel had proved their claims.   The proceeds of the sale of the vessel were paid into the registry of the court on the fourteenth day of February, 1883, and the amount due the libelant was drawn out on that day. Wright, as receiver, immediately thereafter obtained an order for the

payment of five-eighths of the residue, to-wit, $5,547.90, to be applied upon the mortgage, and drew out this money from the registry on the same fourteenth of February. Afterwards and on the same day, but before the owners of the other three-eighhts had obtained any order for the payment of their shares to them, Wright individually filed in the office of the clerk a further claim against the vessel upon several liens amounting to $551.39, and demanded that that amouut should be paid out of the three-eighths then remaining in the registry for the benefit of the other owners.

Upon a reference to take proof of the facts, it appeared that the claims of Wright individually under this petition represent several different maritime liens upon the vessel having priority over the mortgage, and that they had all been assigned to Wright on the fifth of February, and that he is represented by the same proctor in both proceedings, as well as in his original libel.

If the whole amount of these liens is ordered to be paid out of the balance remaining in the registry, the effect will be to charge the three-eighths of the vessel with the whole amount, whereas five-eighths of it should have been charged against the other owners and against Wright, receiver, as holder of the mortgage upon their shares. The circumstances leave no doubt, moreover, that the presentment of the claim on the liens in question was purposely withheld until the five-eighths of the proceeds had been withdrawn from the registry, in order to charge the remaining three-eighths with payment of the whole claim.

I must confess to some surprise that it could be supposed the court would sanction this proceeding. Maritime liens are founded upon equitable considerations growing out of the convenience and necessities of commerce. In recognizing and enforcing them a court of admiralty is governed by the principles of equity. In the language of Judge Betts in the case of *The Utility*, Blatchf. & H. 222, such liens are a "privilege, the advantages of which may be relinquished or lost by the parties; and the facts presented by the particular case are scrutinized with a view to ascertain whether they afford evidence of either the extinction or the waiver of the privilege." In the case of *The Lillie Mills*, 1 Spr. 307, Sprague J., says: "When the rights of third persons have intervened, the lien will be regarded as lost if the person in whose favor it existed has had a reasonable opportunity to enforce it, and has not done so." Accordingly, on a sale of a vessel to a third person, even without the knowledge of the lienholder, the privilege of the latter will be deemed lost, even by a short period of

delay, in enforcing his lien, where he has had opportunity to do so. *The Bristol*, 11 Fed. Rep. 156, 162, and cases cited. Much more, therefore, should the lien be held lost where the claim is purposely withheld until after the vessel, or the proceeds representing it, have been disposed of. Such intentional withholding of the claim is equivalent to an express release of that which is thus suffered to be disposed of.

In the present case the vessel sold was a foreign vessel; the owner of the five-eighths, as is to be inferred from the whole case, is neither accessible nor responsible. The proceeds of all the shares were, therefore, bound to contribute ratably to the payment of the liens now presented, before the payment of the mortgage on the five-eighths. Wright took an assignment of these several liens to himself individually, and knew that five-eighths of these claims were equitably chargeable against the shares on which, as receiver, he held a mortgage. Good faith to the owners of the three-eighths required that the claim for the liens, which took precedence of the mortgage, should be presented against the proceeds representing the whole vessel. To permit a claim upon these liens to be withheld until the five-eighths had been withdrawn, and then to enforce the whole claim against the three-eighths remaining, would be to sustain an inequitable use of a maritime lien, deliberately made to the prejudice of the equal rights of the other owners. Manifest equity requires that only the same proportion of these liens should be paid by the three-eighths, which would have been charged against them had the claim been presented at the time when Wright knew it might and ought to have been presented.

If it be said that the share of each owner in the vessel was liable for the whole amount, it is certainly true that, as between the several part owners of the vessel themselves, the shares of each were liable, primarily, for their due proportion only; and that any further liability of either share beyond that was only like that of a surety as between themselves, and only secondarily liable for the proportion of the others. Wright's drawing the five-eighths upon his mortgage before presenting his lien was, as I have said, equivalent to an express release of those five-eighths, and as such was in equity a release of the fund primarily liable to pay five-eighths of the liens. In such cases the well-established rule in equity is that a release of the fund primarily liable is *pro tanto* a discharge of the fund which is only secondarily liable for the same claim. *Ingalls* v. *Morgan*, 10 N. Y. 178; *Neimcewicz* v. *Gahn*, 3 Paige, 614; *Barnes* v. *Mott*, 64 N. Y. 397, 400.

The owners of three-eighths of the fund in the registry are entitled to the benefit of this principle of equity, and are therefore exonerated to the extent of five-eighths of this claim, which was chargeable against the five-eighths of the proceeds withdrawn.

The petitioner, therefore, will be entitled to three-eighths of his claim out of the proceeds now remaining in the registry, namely, $206.73, with three-eights of his costs, and the commissioner's report is affirmed.

An additional motion is made by the owners of the three-eighths that Wright, as receiver, return to the registry of the court the amount withdrawn by him, as ordered in the case of *The Phebe*, 1 Ware, 362, in order that it may contribute to pay the lien. In the view above taken, it is unnecessary to make such an order in this case. That question would only properly arise as between Wright, receiver, and Wright individually, and the latter would seem, by his own voluntary action, to be precluded from making any such motion.

A further application is made to the court to direct the costs in the original decree to be paid by the claimants personally, and not charged against the proceeds of the vessel, inasmuch as that would diminish by so much the amount applicable to the mortgage lien, the owners of three-eighths of the vessel having alone appeared as claimants and litigated the libelants' demand.

Where an action has been unreasonably, unjustifiably, or improperly defended, so that unnecessary expenses have been incurred, I have no doubt a court of admiralty may, in its discretion, as a court of equity may do in analogous cases, order the costs, or any part of them, as may be proper, to be paid personally by the litigating parties; but otherwise I think the costs of the prevailing party should be paid from the fund. *Bank of Plattsburg* v. *Platt*, 1 Paige, 464; *Boyd* v. *Dodge*, 10 Paige 42; *Millandon* v. *Brugiere*, 11 Paige, 163; *The Temiscouata*, 2 Spink, 208.

The owners of a portion of the vessel are justified in a reasonable defense against claims upon her. In the present case the libelants recovered less than the amount demanded, and the right of the libelants to recover at all was certainly a fair subject of controversy. The defense was reasonable, *bona fide*, and in part successful; it was for the benefit of the whole vessel and all the owners; and the costs attending the defense ought, therefore, to be imposed, not against the part owners who defended, but against the vessel, in whose interest the defense was made. The costs necessarily attending the enforcement of a legal demand are ordinarily regarded as incidental to the

demand itself, so as legally to become a part of it, even as against subsequent incumbrancers. The principle is of very frequent application in cases of foreclosure of mortgages, in which the expense of any *bona fide* and justifiable litigation in foreclosure increases the mortgage demand and is paid out of the proceeds of sale, although it may prejudice subsequent mortgagees or lienors. Persons taking or holding junior liens take them subject to this contingency. *Kenebel* v. *Scrafton*, 13 Ves. 370; *Titus* v. *Velie*, 6 Johns. Ch. 435; *Mackie* v. *Cairns*, 5 Cow. 547, 565; *Jones* v. *Phelps*, 2 Barb. Ch. 440; *Bockes* v. *Hathorn*, 17 Hun, 87, 89; *Farmers' Loan, etc.*, v. *Millard*, 9 Paige, 620.

The practice in admiralty is similar; and, though the reported cases may be few, the records of the court show that the ordinary practice is to pay the costs out of the proceeds of sale. *The William F. Safford*, 1 Lush. 69; *The Wexford*, 7 Fed. Rep. 674, 684; *The Orient*, 12 Fed. Rep. 158.

In this case I do not find any sufficient reason to depart from the ordinary rule, and the libelants' costs must therefore be paid out of the proceeds of the vessel.