MARY T. COLLIER, RESPONDENT, *v.* EMELINE MILLER, AND EMELINE MILLER AND ANOTHER, AS EXECUTORS OF ALLEN S. MILLER, DECEASED, APPELLANTS, IMPLEADED WITH OTHERS, RESPONDENTS.

| 62 99|
|137a 332|

*Mortgages — a verbal agreement without consideration, as to the priority of one of two mortgages, enforced against a subsequent assignee — it is a collateral agreement — laches — judgment for a deficiency.*

Richard Miller and Harvey Miller being equal owners of certain premises, and being about to sell them to one Stupplebeen, agreed that of two bonds and mortgages, each of $4,000, to be taken by them upon such sale, the mortgage to be taken by Harvey should be a prior lien. Besides said mortgages Stupplebeen paid to the grantors $6,000 in cash. In pursuance of such agreement, not made upon a valuable consideration, the mortgage to Harvey was recorded first and at once, the mortgage to Richard the next day.

At the time of making said agreement it was the intention of Richard, as Harvey knew, to transfer his mortgage to one Wise, from whom Richard was about to purchase a farm. This transfer was afterwards made, the agreement as to priority not being disclosed to Wise, except as the record disclosed it. Wise, at the time he took his mortgage, believed it to be of equal lien with the one held by Harvey.

Stupplebeen was present when Harvey and Richard made their agreement and did not object to it. Wise held the mortgage about nine months, and his assignees for seventeen years.

In an action brought by Wise's assignee for the foreclosure of this mortgage:

*Held,* that the agreement as to priority was valid and must be sustained. (LANDON, J., dissenting.

That said agreement was a collateral one and was not merged in the first mortgage.

That the facts did not show that Wise was defrauded thereby; and that if he were, the lapse of more than seventeen years made his demand stale. (LANDON, J , dissenting.)

That as the contract between Wise and Richard was not proved, it was impossible for the court to say that the contract gave Wise any specific rights or equities in regard to the mortgage assigned to him

That as one Miller, upon assigning the mortgage to the plaintiff, had guaranteed its payment, and as Miller's estate was solvent and had never been discharged from liability, and as his widow had received a large share of his estate, it was proper that both the estate and the widow should be declared liable for any deficiency which might occur upon the sale, the widow to the amount of the assets received by her.

APPEALS by the defendants, Emeline Miller and Reuben Miller, as executrix and executor of Allen S. Miller, deceased, and

by Emeline Miller, individually, from so much of a judgment, entered, after a trial at the Columbia Circuit before the court and a jury, in the office of the clerk of the county of Columbia on the 14th day of January, 1891, as ordered and adjudged "that the mortgages executed by Martin H. Stupplebeen to said Harvey Miller (being the said mortgage owned by the defendant Peter S. Anderson) is entitled to priority over the mortgage executed by the said Martin H. Stupplebeen to the said Richard Miller;" and from so much thereof as further orders and adjudges that said defendant "Peter S. Anderson is entitled to be paid the amount thereof out of the first moneys realized from the sale of said premises, after deducting the costs of this action and the expenses of said sale;" and from so much thereof as further adjudges that the plaintiff is only entitled to be paid the amount of her mortgage out of the avails of said sale next after the said payment of said mortgage of said Peter S. Anderson, and the costs of this action and the expenses of said sale;" and from so much of said judgment as orders and adjudges that the referee "pay to Robert E. Andrews, the attorney for the defendant Peter S. Anderson, the sum of two hundred thirty-seven and $\frac{25}{100}$ dollars adjudged to the defendant Peter S. Anderson for his costs and disbursements in this action, with interest thereon from the date" of such judgment; and also from so much thereof as orders and adjudges that the referee "also pay to Robert E. Andrews, the attorney for the defendant Peter S. Anderson, the sum of $4,228.33 stated in said decision to be due the defendant Peter S. Anderson on the 16th day of April, 1890, together with legal interest thereon from said 16th day of April, 1890, or so much thereof as the purchase-money of the mortgaged premises will pay the same, that he take a receipt therefor;" and from so much thereof as orders and adjudges "that the amount due to the defendant Peter S. Anderson, or upon the mortgage held by him, is entitled to be paid out of the mortgaged property before the amount due on the mortgage held by the plaintiff," and from so much thereof as orders and adjudges "that the mortgage held by the defendant Peter S. Anderson is entitled to priority in payment to the mortgage held by the plaintiff;" and from so much thereof as limits the right of the plaintiff to any part of the avails of the mortgaged premises until after payment in full of the amount due

on the mortgage held by the defendant Peter S. Anderson, and from so much thereof as orders and adjudges that if the "residue of the proceeds of said sale left, as aforesaid, after the payment above directed to be made, for the costs of this action, and interest thereon, and the fees and expenses on such sale, and of the sum of $4,228.33 to R. E. Andrews, the attorney for the defendant Anderson, the amount stated in said decision to be due said Anderson on the 16th day of April, 1890, with the interest thereon from the said 16th day of April, 1890, be insufficient to pay the plaintiff the said sum of $4,228.33 stated in said decision to be due the plaintiff on the said 16th day of April, 1890, together with legal interest thereon from said 16th day of April, 1890, the said referee specify the amount of such deficiency in his report of sale," and so much thereof as orders and adjudges, that the defendant "Emeline Miller pay such deficiency to the amount of $2,623.90, the amount paid to her under the decree of the surrogate of Columbia county out of the personal estate of Allen S. Miller, deceased, and that the plaintiff have judgment and execution therefor."

And from so much thereof as orders and adjudges "that the defendant Emeline Miller pay of any deficiency to the amount of $2,623.90, and the plaintiff have judgment and execution therefor."

And from so much thereof as orders and adjudges "that the defendants Emeline Miller and Reuben Miller, as executrix and executor, etc., of the will of the said Allen S. Miller deceased, pay any deficiency or residue of the debt of the plaintiff remaining unsatisfied from proceeds of sale of said real estate, and from said Emeline Miller individually."

And from so much thereof as orders and adjudges that any of the provisions of said judgment be "without prejudice to the plaintiff to take any proceedings which may be proper for the enforcement and collection of any deficiency that may remain out of the legatees or the estate of the said decedent Allen S. Miller, or otherwise, and also separately from each and every part of the several provisions of said judgment herein stated, as appealed from as aforesaid."

*William M. Brownell* and *Jacob F. Miller*, for the appellants.

*C. P. Collier*, for the respondents.

*R. E. Andrews* and *Levi F. Longley*, for Peter A. Anderson, respondent.

*E. P. Magoun*, for respondents, Eugene Stupplebeen *et al.*

LEARNED, P. J.:

The plaintiff commenced the foreclosure of a mortgage. Certain defendants, Miller and others, set up that another mortgage on the same premises, held by one Anderson, not then a party, was a concurrent lien with plaintiff's mortgage, and that Anderson should be made a party. Thereupon the plaintiff served an amended complaint setting forth the facts, and the claim of Miller and others, defendants, and averring that the plaintiff had not sufficient knowledge to form a belief whether said Anderson's mortgage was a prior or a concurrent lien. The plaintiff made Anderson a party.

On the trial the court found that the Anderson mortgage was the prior lien. The plaintiff does not appeal. But Emeline Miller and Emeline Miller and another, executrix and executor of Allen S. Miller, do appeal. Allen S. Miller had previously held the mortgage now held by plaintiff, and had guaranteed the payment. The judgment required Emeline Miller, who, as legatee, had received a certain amount from the estate of Allen S., to make good any deficiency on the foreclosure to the extent of the amount she had received.

The two questions, then, are, first, were the two mortgages concurrent liens, or was the Anderson mortgage a prior lien? Second. Can there be a judgment against Emeline Miller for deficiency?

The two mortgages were purchase-money mortgages, executed at the same time by one Stupplebeen; the one now held by plaintiff being executed to Richard Miller; the one now held by Anderson being executed to Harvey Miller; each covering the whole property, and each dated April 1, 1870, and payable in ten years.

The learned judge before whom the cause was tried, adopting the verdict of the jury on this point, found that on the day of the date of the said mortgages, and before the actual delivery thereof, it was agreed between said Richard and Harvey that the said mortgage executed to Harvey should be and remain the first lien on the said premises and should have priority over that executed to Richard.

The said judge further finds that, in pursuance of said agreement, the said mortgage to Harvey was immediately recorded, viz., on

that day at 2.40 P. M., and that the said mortgage to Richard was left to be subsequently recorded, and was recorded by the assignee thereof April 2, 1870, at 2.30 P. M.

The said judge further finds that, at the time of making the agreement aforesaid, it was the intention of Richard to transfer the mortgage received by him to one Arnold Wise, in part payment for a farm purchased by him of said Wise; that said Harvey knew of said intention; that said agreement, by which Harvey's mortgage was to have priority, was not disclosed to said Wise, nor was said Wise informed in any way whether or not said mortgages were equal and concurrent liens. Said Richard, on said first day of April, assigned his said mortgage to said Wise, who took the same at its face as part payment on a farm thus conveyed by him to Richard, and took the same believing it and the mortgage to Harvey to be equal and concurrent liens.

No consideration was paid by Harvey to Richard for the agreement that Harvey's mortgage should have priority. No agreement as to priority was made with Stupplebeen, the mortgagor. Stupplebeen was, however, present at the time when the agreement was made.

The question was submitted to the jury whether the attorney for Mr. Wise was informed, after the execution of the bonds and mortgages, that they were equal liens in point of time. The jury answered in the negative and the court adopted the finding. This question was put to raise a presumption that the said agreement between Richard and Harvey was made with intent to defraud Wise. But such intent is not shown. Stupplebeen paid more than $6,000 for the property, above the two mortgages of $4,000 each. So that the second mortgage, in point of priority, would have been, at that time, a good security for the amount thereof.

If the two mortgagees, before the actual delivery of the mortgages, agreed that one should have priority over the other, that agreement is binding and will be carried into effect, even though the mortgages were recorded at the same time. (*Jones* v. *Phelps*, 2 Barb. Ch., 440.) In that case the court says that the law, in order to carry out the agreement of the parties, will presume that the mortgage which was to have priority was delivered before the other. The converse of this principle was decided in *Greene* v. *Warnick* (64 N. Y., 220).

In that case the agreement was that the two mortgages were to be concurrent liens; and this agreement was enforced, although one was recorded before the other, and each had passed into the hands of a *bona fide* holder." To a similar effect is *Stafford* v. *Van Rensselaer* (9 Cow., 316). So that, as said in *Granger* v. *Crouch* (86 N. Y., 494), the decisive test in every case is the intention of the parties, either as actually expressed or as derived from the natural equity of the situation. Now, in the present case nothing is expressed in the instruments on the question of priority. The fact that they are of even date and of signature and acknowledgment may afford a presumption that they were intended to be concurrent. But such concurrence is not expressed in them. And the presumption yields to proof of the agreement. It was certainly competent for all the parties to agree that one mortgage should be delivered and recorded before the other, and should thus have the priority.

As Stupplebeen was present at the making of the agreement and did not object, and as the matter was one in which he seems to have had no real interest, he must be considered as assenting to the agreement between the mortgagees. (See *Freeman* v. *Schroeder*, 43 Barb., 618.)

In several of the cases above referred to the intention of the parties did not harmonize with the priority apparent on the record, and the intention was held to overcome that apparent priority. In the present case the intention and the apparent priority on the record agree.

If the agreement was, as found by the jury and the court, prior to the delivery of the mortgages, it became an executed agreement by the delivery of Harvey's mortgage to him with the consent of Richard and with the evident purpose that it was to be recorded before Richard's. It was not an agreement necessarily expressed in the mortgage. It was collateral and not merged in the mortgage. Nor does it vary the written instruments, because nothing was expressed in them as to priority.

The appellants, passing the question whether the agreement was valid as between Richard and Harvey, claim certain equities for Wise. They say that the agreement was a fraud upon him. But there is no proof of any intention to defraud him. Indeed, the fact that Harvey's mortgage was recorded at once indicates a desire

to give notice to the world of the priority agreed upon, and when Wise took the assignment from Richard he could have seen Harvey's mortgage on record. The fact that Harvey knew that Richard intended to assign his mortgage to Wise is no evidence that a fraud was intended. Nearly $7,000 had been that day paid for the property over and above the two mortgages of $4,000 each. The appellants urge the principle that one who stands by in silence and permits another to deal with his property may be estopped. But that principle has no application, for Harvey at once gave notice to the world of his mortgage and recorded it as a first lien. Wise, then, if he had looked at the records to see whether he was obtaining a good mortgage, would have found Harvey's mortgage on record. There was nothing in the contents of either mortgage to show that another similar mortgage existed as concurrent or otherwise.

Wise held the mortgage for about nine months; his assignee and the subsequent assignees for some seventeen years. During this time it does not appear that any question of fraud upon Wise had been raised, or that any claim had been made that Harvey's mortgage was not rightfully the prior lien. Even the present plaintiff averred in her complaint that the Harvey mortgage was the prior lien, and, therefore, did not make the holder a party until compelled to do so. The claim of fraud is certainly stale.

The appellants further urge that, as Wise had agreed, sometime in January previous, to sell his farm to Richard, Wise became, in equity, the owner of Richard's mortgage. But the contract between Wise and Richard is not given in evidence. There is no evidence whatever that, by that contract, Richard was to assign to Wise this mortgage in part payment. This is asserted in the appellants' points, but is not proved, and is improbable. Nor is there any proof that Harvey thought that Wise expected to receive a first or a concurrent mortgage. This mortgage had no existence when that contract was made. And, as the appellants did not produce the contract or prove its contents, we cannot assume that that contract referred to a mortgage not in existence, or that it specified such a mortgage to be a first lien. It is impossible, then, on the facts proved, to say that Wise had any equitable rights in Richard's mortgage. Nor is there any evidence that Richard, when he assigned his mortgage to

Wise, represented that it was a prior or a concurrent lien. One who assigns a second mortgage does not, by that act, guaranty that it is a first lien, even though the first mortgage be not on record.

Indeed, at another part of their argument, the appellants admit that the question, so far as the assignees are concerned, is the same as if the contest were between Richard and Harvey. This was held in *Greene* v. *Warnick* (*ut supra*) and other cases, in spite of all the protection intended to be given to a *bona fide* purchaser by the recording acts. If the appellants are correct in this, that is, if the question here is just what it would be if Richard and Harvey were now the separate owners of the two mortgages, can there be a doubt that the learned judge was right? The two mortgages, as yet, not being delivered, the owners agree that Harvey's shall have priority. Thereupon, in pursuance of that agreement, Harvey's is immediately recorded, and, of course, delivered. Thus the agreement is executed.

The plaintiff claims ownership of her mortgage through an assignment and guaranty made by Allen S. Miller, since deceased. Reuben Miller and Emeline Miller were his executor and executrix. His personal property amounted to $5,607.54. There was a final accounting of the executor and executrix in October, 1884, under which they paid to Emeline, the widow, $2,514.75 on her legacy. Allen S. Miller left a valuable farm, the use of which was given to her for life. The judgment directs that, if there is a deficiency, Emeline pay that to the extent of the money received by her aforesaid. It also adjudges the executor and executrix to pay any further deficiency.

The decree entered on the accounting of the executor and executrix does not show who was cited. It is conclusive evidence only against those who were cited or appeared. (Code, § 2742.) There is no proof of any advertisement for claims. (2 R. S., m. p. 88, § 34, and m. p. 89, § 39.) So that there is no evidence before us showing that the executor and executrix are relieved from liability from this claim.

As to the liability of the legatee, that appears according to sections 1837 to 1841 of the Code. And we do not see why a judgment may not be had against her.

The judgment does not authorize a sale of the real estate of the deceased. It states only that this judgment is without prejudice to proceedings which may be taken. The appellants are in error in

their understanding of the language of the decree. The words "remaining unsatisfied from proceeds of sale of *said* real estate" are to be read together to refer to the sale of the mortgaged premises, "*said* real estate." We see no error in the case.

The judgment is affirmed, with costs.

MAYHAM, J., concurred.

LANDON, J. (dissenting):

The two mortgages were concurrent in date, execution and delivery, were alike in form, were intended by the mortgagor to create concurrent and equal liens upon the mortgaged premises. The mortgagees were the grantors by deed of the same date to the mortgagor of their equal undivided interest in the premises, and the mortgages were both given to secure parts of the purchase-money. They were, therefore, of equal and concurrent lien, unless some existing equity required that one should have priority over the other (*Boies* v. *Benham* [Ct. App.], 28 N. E. Rep., 657), or a valid agreement to that effect existed between the mortgagees at the time of their execution and delivery. (*Jones* v. *Phelps*, 2 Barb. Ch., 440.) The mere fact that one was recorded before the other did not of itself create any priority. (*Greene* v. *Warnick*, 64 N.Y., 226; *Decker* v. *Boice*, 83 id., 215.) The respondents do not claim any equitable priority, but rely upon priority created by the agreement between Harvey and Richard Miller prior to the execution and delivery of the two mortgages. If that agreement, if it may be called such, were free from fraud, it might uphold the claim of priority given by the judgment to the mortgage to Harvey Miller. But I think that agreement must be condemned as fraudulent. Before the execution of the two mortgages, and in expectation of their execution, Richard Miller made an agreement with Arnold Wise for the purchase, by Richard, of Wise's farm, the $4,000 mortgage to be received by Richard to be applied in part payment of the purchase-money thereof. This agreement was known to Harvey Miller. Some point is made that Harvey did not know that Wise was to take the mortgage from Richard. Harvey himself testified, when asked if he knew that Wise was to take that mortgage that day : "No, not positively, but I supposed it would be turned in ; whether Wise or somebody else would take it I didn't

know, but I supposed it would be turned in for that property. I knew no other source in which Richard would turn that mortgage." Of course the person to be cheated, whether Wise or another, is now as immaterial to the question under consideration as it was then to Harvey. The intention was, by a secret agreement between themselves, to import into Richard's mortgage a latent defect which would benefit Harvey's mortgage, and then assign the impaired mortgage without disclosing the impairment, and thus thrust upon the assignee, whether Wise or another was immaterial, the risk to result from their artifice.

The suggestion that they did not do this to cheat Wise, but merely to help Harvey; that they believed the mortgage assigned him would be good, though not so good as it purported to be; that Richard did not expressly tell him it was equal in lien with Harvey's mortgage, are more like appeals to charity to condone their fraud than evidence in disproof of it. Whatever advantage the secret agreement would confer upon Harvey they meant he should stealthily acquire, and whatever increased risk it might thrust upon Wise they meant he should not know until it should be too late for him to refuse it. The facts indicate that while Richard was taking his mortgage to the law office where it should be transferred to Wise, Harvey was taking his mortgage to the clerk's office to be recorded. Was it necessary that Wise should station a messenger at the clerk's office in order to detect the record of Harvey's mortgage, before he could finish his transactions with Richard? Clearly not, in view of the law with respect to such mortgages, that mere priority of record confers no priority of lien. The maxim of *caveat emptor* does not apply to a latent defect or vice caused or created by the vendor himself. (*Hoe* v. *Sanborn*, 21 N. Y., 552; *Littauer* v. *Goldman*, 72 id., 506.) Much less will the maxim apply where the latent defect is created for a fraudulent purpose by the vendor; for it is idle for the buyer to take heed when the artifice of the seller is so contrived as to baffle the buyer's caution.

It is true that Wise was not expressly told after the two mortgages were executed that they were equal liens in point of time. That is to say, no oral misrepresentation was superadded to the representation implied by the mortgages themselves, and the open facts respecting them. Harvey and Richard intended to deceive Wise

by concealing what it was Richard's duty to disclose, and what it was Harvey's duty to see to it that Richard did disclose. Mutual concealment was necessary to make quite sure of the success of the imposition upon Wise. It was not needful for the appellants to prove an affirmative oral misrepresentation to Wise after the execution of the mortgages, and the failure to do it was not material.

As the assignee of each mortgage abides by the case of his assignor, the rights of the present owners as to priority are the same as they stood between Harvey and Richard before Richard's assignment to Wise. As no priority was acquired by Harvey by the mere act of his priority of recording, the question now depends upon the validity of their oral understanding to give Harvey's mortgage priority of lien. It will be noticed that that understanding was not based upon any consideration; it was destitute of any equities to uphold it; it was a mere *nudum pactum*, and, therefore, not a binding agreement. Richard, therefore, was not bound by it. But if we call it an agreement it was entered into for a fraudulent purpose, and, therefore, not binding upon Richard. *Ex maleficio non oritur contractus.* Harvey could not enforce it against Richard. *Ex dolo malo non oritur actio.* They were equal wrong-doers. *In pari delicto potior est conditio defendentis.* The mortgages, therefore, remained as they were when executed, concurrent. · It is suggested that the agreement for prior record is executed, but, as we have seen, nothing follows to fix priority from the mere recording, and, therefore, the situation is unchanged by that fact. Priority of lien can only exist by virtue of a valid agreement; and as the facts disprove its validity, even if the prior record were presumptive evidence of it, equality remains. ·

The judgment should be modified by declaring such equality of lien, and equal right to the proceeds of sale, and disallowing costs to the defendant Anderson, and awarding to appellants costs against him of this appeal and in the court below, and in other respects affirmed, with costs to the plaintiff out of the proceeds.