ROBERTS and another *vs.* MANSFIELD.

It is error in the Court to assume in its charge to the jury, that an important fact in the case has or has not been proven, especially where the evidence is doubtful.

When one holds two notes, secured by mortgage, and transfers the one, retaining the other, the mortgage lien accompanies the transfer of the note as an incident, and it would seem that in case the security falls short of paying both notes, the holder of the transferred note has a preference over the mortgagee, who retains the other.

In Equity, in Mitchell Superior Court. Tried before Judge ALLEN, at the May Term, 1860.

The record in this case exhibits the following facts and questions, to wit:

On the 1st day of August, 1853, William W. Faircloth, David Faircloth, and Riley B. Faircloth, executed two promissory notes of that date, for one thousand dollars each, one due the 1st day of January, 1855, and the other due 1st day of January, 1856, and both payable to James Mansfield or bearer.

For the better securing the payment of said notes, the Faircloths, at the same time, executed a mortgage deed to Mansfield for three hundred and twenty acres of lot of land, No. 414, in the 7th district of Irwin county, and one hundred acres of lot of land, No. 8, in the 1st district of Baker county.

On the 31st day of August, 1853, the said Mansfield assigned all his right, interest, and claim in the mortgage, to one William H. Watson, for value received, without recourse.

On the 1st day of May, 1854, the said Mansfield trans-

ferred one of the said notes to one Jesse Pate, as the agent of one Hardy Treadwell, and executed and delivered an agreement in writing, of which the following is a copy:

"GEORGIA, DOUGHERTY COUNTY.

"Whereas, I have this day transferred to Jesse Pate a promissory note on William W. Faircloth, David Faircloth, and Riley B. Faircloth, for the sum of $1,000 00, dated the 1st day of August, 1853, and due on the 1st of January, 1856, payable to me or bearer, which is secured by a mortgage on three hundred and twenty acres of lot of land, No. 414, in the 7th district of Irwin county, and one hundred acres of lot of land No. 8, in the 1st district of Baker county, which said mortgage I do hereby agree to have transferred to said Pate, before the note falls due, for the purpose of securing the payment of said note to said Pate, his heirs or assigns.

"Witness my hand and seal, this 1st May, 1854.
    "JAMES MANSFIELD."   [Seal.]

On the 6th day of January, 1855, the said mortgage was reconveyed by Watson to Mansfield, and Mansfield brought an action, and obtained judgment, in Dougherty Superior Court, against all three of the Faircloths, for the amount due on the note which became due on the 1st of January, 1855, and a *fi. fa.* was issued from said judgment, and levied upon the land described in the mortgage, on the 8th of January, 1856.

On the 5th of March, 1856, the land was sold at sheriff's sale under the said levy, and bought by one W. W. Cheever, for $1,135 00, which paid off the *fi. fa.* in full, and left a surplus of $122 60, which was afterwards paid to one of the defendants, by an order of Court.

The sale of the land was brought about by Mansfield, and he was present when it took place. The Faircloths were entirely insolvent, and the mortgaged land was the only security for the payment of the note.

Pate delivered the note on the Faircloths, and the agree-

ment of Mansfield to Hardy Treadwell, who knew nothing of there being another note, to take precedence of payment. Treadwell transferred the note and the agreement to James T. Roberts, who paid full value for them, without any notice that there was another note, secured by the same mortgage, which was to become due before the note so received by him.

Before the land was sold, Roberts, by his attorney, demanded a transfer of the mortgage from Mansfield, according to the terms of his written agreement with Pate, with which demand Mansfield refused to comply.

On the 18th day of April, 1856, Roberts brought an action in Baker Superior Court, against Mansfield, to recover damages for a breach of his agreement to have said mortgage transferred.

To this action, Mansfield pleaded that there was a mistake in said written agreement, and that it failed to speak the real intention and true contract of the parties thereto, in the following particulars, to-wit: First, that the name of "John N. Pate" should have been inserted in the agreement, instead of "Jesse Pate." Second, that the amount of the note should have been stated to be, "$100 05," instead of "$1,000." Third, that said agreement should have contained a reservation of the right of Mansfield to have the note, due the first of January, 1855, paid out of the mortgaged property, before the same was transferred to Pate or his assignee.

On the trial of the case, the presiding Judge excluded the evidence offered by Mansfield, to prove the mistake in the agreement, on the ground, that, at law, parol evidence was inadmissible to contradict, add to, or vary the terms of a written contract, and that Mansfield's remedy, if he had one, was by bill in Chancery, to reform the written agreement.

Mansfield then filed his bill in Equity, alleging the mistake in said agreement, to which bill, Roberts and Treadwell were both made party defendants. The bill also alleged that Pate was but the agent of Treadwell in the transaction, and that in said transaction, out of which the transfer of the note and the execution of said agreement to Pate arose, Treadwell was indebted to Mansfield some $453 00. The bill

prayed an injunction of the common law action; a reformation of the agreement, and a decree against Treadwell for the sum due by him to Mansfield.

Treadwell and Roberts filed their answers to the bill, in which they denied all knowledge of any mistake in the agreement, and Roberts insisted that he was an innocent purchaser of the note and agreement, for their full value, before the note was due, and without any knowledge or notice that there was another note secured by the mortgage, which was due before his.

On the trial of the case, in addition to the foregoing facts, it appeared, in evidence, that Mansfield tendered to R. F. Lyon, Esq., the attorney of Roberts, but not of Treadwell, a written transfer of the mortgage, in which transfer it was stipulated that Mansfield retained the right to hold the mortgage to secure the payment of the first note described therein, and that the transfer was made without recourse on Mansfield.   The transfer was dated the 17th of December, 1855, and tendered, after a demand had been made on Mansfield for a transfer, according to his agreement with Pate.

Counsel for Mansfield offered said transfer in evidence, to which counsel for Roberts objected, on the ground that no mistake had, as yet, been shown in the written contract.  This objection was overruled, and the transfer admitted, to which counsel for Roberts excepted.

Pate testified: That, to the best of his rellection, the understanding and contract was, that, after the note which first became due was paid, Mansfield was to give Treadwell full control of the mortgage; that Mansfield refused to transfer the mortgage until the first or oldest note was paid, and stated that the transfer of the mortgage was unnecessary, as it was recorded.

Col. David A. Vason testified: That Pate and Mansfield called on him to draw up the agreement to transfer the mortgage, and that he drew the paper, as he then understood the parties desired; that he asked where the mortgage was, and they stated that Mansfield had, before that time, transferred it to Watson, to whom the first note had been traded, and

Roberts and another, *vs.* Mansfield.

that he would get it back from Watson before the second note fell due; that R. F. Lyon refused the transfer tendered him, because it was conditioned, and reserved the right to control the mortgage for the security of the first note.

There was some other testimony adduced on the trial, but a sufficiency is here given to illustrate the decision of the Court.

Counsel for Roberts moved to dismiss the bill, which motion was overruled, and the decision excepted to by said counsel.

The presiding Judge then charged, and refused to charge, the jury, as specified in the motion for a new trial, given in a subsequent part of this statement.

The jury returned a verdict in favor of complainant against both defendants, and against Treadwell, $453 00, principal, with interest and cost of suit.

Counsel for Roberts then moved for a new trial, on the grounds :

1st. That the Court erred in admitting, in evidence, the transfer from Mansfield to Treadwell, before any mistake in the agreement given to Pate had been shown ; and the Court erred in admitting Pate's testimony ·to contradict a written agreement, counsel for Roberts objecting thereto at the time.

2d. Because the Court erred in not dismissing complainant's bill for want of equity, when the motion was made by counsel for Roberts.

3d. Because the Court erred in charging the jury, that the agreement to transfer the mortgage was not negotiable, and that Mansfield could set up any defense against Roberts that he could have set up against Treadwell.

4th. Because the Court erred in charging the jury, that the question of notice did not arise in this case, and that Roberts was bound by the mistake in the agreement, whether he had notice of it or not.

5th. Because the Court refused to charge the jury, when requested by counsel for Roberts, " that this mortgage being given to secure. both notes, if the land could only pay the sum due on the first note, that Roberts, the holder of the

second note, getting it before due, and without notice of any equities attaching to it, was entitled to a *pro rata* share of the proceeds of the sale of the land.

6th. Because the verdict was contrary to law.

7th. Because the verdict was contrary to the evidence, and the weight of evidence.

The motion was overruled, and a new trial refused on all the grounds taken, and that decision is the error alleged in the record.

IRVIN & BUTLER, for plaintiff in error.

VASON & DAVIS, STROZER & SLAUGHTER, for defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

We think it best to remand this cause for a rehearing. It seems not to have been submitted to the jury in such a way as to direct their attention to the exact issue upon which it depends, and the law applicable thereto.

Did the evidence justify the reformation of the contract between Mansfield and Pate, as to the transfer of the Faircloth mortgage?

The Courts uniformly hold, that the mistake should not only be distinctly alleged, but that the proof should be clear and satisfactory, to reform a writing. And it is reasonable and right that it should be. Pate testifies that it was the contract and understanding, that Mansfield was to have and hold a prior lien on the land under the mortgage, to secure the payment of the note which he retained; and that Mansfield declared that he would not make the transfer upon any other terms. And yet, Mr. Vason, a clear-headed, skillful attorney, who seems to have been acting as counsel for Mansfield throughout, swears that he drew the instrument just as he was told to do by Mansfield and Pate, and yet, the paper contains no such reservation.

It may be that what Pate states is true, namely, that the agreement was as he represents; and yet, the part left out

was intentionally omitted; the parties supposing it was binding, though resting in parol only. If this be so, it cannot now be incorporated. Besides, this omission was not one of those occult matters that was likely to escape the notice of Mansfield and Pate. It was simply whether Mansfield retained the lien of the mortgage to pay his note first, or parted with it to Pate for Treadwell.

This being the state of the testimony, the Court charged the jury that the question of notice did not arise in this case, and that Roberts, the present holder of the note traded to Treadwell, was bound by the mistake in the agreement, whether he had notice of it or not. The Judge, it will be perceived, without submitting it to the jury to find whether or not the mistake existed, under the somewhat stringent rules of evidence applicable to this doctrine, assumes that the mistake existed in the pointed language which we have quoted, and then tells the jury that Roberts is bound by it, whether he knew it or not. And in the bill of exceptions this charge stands alone, unqualified and unexplained by any thing which accompanies it.

If the testimony establishing the mistake was clear and satifactory, we might sustain the judgment, notwithstanding the assumption by the Court that the mistake was proven. But the evidence not being of this character, we may well suppose that the charge may have had a controlling effect upon the jury, coming, as it did, from the mouth of the Court.

If it be true that the law, independent of any contract, transfers the mortgage with the note, so as to entitle the transferee to a preference over the mortgagee who held the first note, the proof in such case should be stronger still to restrict this right. (See Collins vs. Irwin, executor of Hitchcock; 4 Ala. Rep.)

Indeed, for myself, I confess I am not very sure that not only the mortgage, but all contracts to further the collection of this second note, are transferred by operation of law with the note to the holder, and the note being traded before due, the mortgage, as well as this contract between Mansfield and

Pate, goes with the note, divested of any equity which might exist between the original parties. I would not commit myself, however, much less the Court, upon this last point.

Judgment reversed.