TITLE GUARANTEE AND TRUST COMPANY, Plaintiff, *v.* MORTGAGE COMMISSION OF THE STATE OF NEW YORK, Defendant.

First Department, October 30, 1936.

*Timothy N. Pfeiffer* of counsel [*Sinclair Hamilton* and *Wilber Stammler* with him on the brief; *Milbank, Tweed, Hope & Webb* and *Joseph V. McKee*, attorneys], for the plaintiff.

*John J. Clarke* of counsel [*Maurice Finkelstein* and *Frieda B. Hennock* with him on the brief; *Benjamin J. Rabin,* attorney], for the defendant.

TOWNLEY, J. In this submitted controversy there are offered for answer four questions based on claims made by the plaintiff, Title Guarantee and Trust Company (hereinafter called the title company), against certain funds in possession of the defendant, Mortgage Commission of the State of New York, an agency created by chapter 19 of the Laws of New York for 1935. These four questions concern the disposition of funds arising or likely to arise out of two " type " situations occurring during the course of the rehabilitation of the Bond and Mortgage Guarantee Company (hereinafter called the guarantee company).

The title company issued and sold certificates representing undivided shares in first mortgages of which mortgages it was the sole owner. These certificates constituted the only agreement and understanding between the title company and the purchasers thereof. Each certificate was guaranteed as to principal and interest by virtue of a blanket policy of guaranty issued by the guarantee company. This policy guaranteed payment of principal and interest to the title company and to all subsequent owners of the mortgages.

The guarantee company is in process of rehabilitation under the Superintendent of Insurance. The Mortgage Commission, pursuant to section 6 of chapter 19 of the Laws of 1935, as amended, has taken over the servicing of the mortgages theretofore sold by the title company and guaranteed by the guarantee company and is now collecting interest payments thereon and distributing such payments to the persons entitled thereto.

The title company is a holder of record of a first mortgage dated July 26, 1927, the unpaid principal of which amounts to $295,500. It sold to various purchasers certificates representing undivided shares in the mortgage amounting in the aggregate to the principal sum of said mortgage. The certificates which were prepared by the title company were identical in form and show on their face that they were guaranteed by the guarantee company and issued by the title company. They recite that the title company has received from the purchaser the sum of blank dollars for the purchase of, and hereby assigns to the purchaser an undivided share equal to the named amount in the bond and mortgage covering the given premises.

The material provisions of the certificate read as follows:

" This bond and mortgage, together with the policy of the Bond and Mortgage Guarantee Company, guaranteeing to holders of this

and similar certificates payment of principal and interest, are held by the Company as depositary and agent for the holders of such certificates which shall never aggregate more than the amount of principal remaining unpaid on said bond and mortgage, upon the following terms and conditions which are agreed to by the holder of this certificate.

" 1. The Company holds and shall continue to hold said bond and mortgage, said policy of Bond and Mortgage Guarantee Company and the other instruments and evidences of title relating thereto for the benefit of the purchaser and any other persons interested therein.

" 2. The Company, on receipt of the interest and principal of said bond and mortgage, as required therein, shall distribute the same among the persons entitled thereto. If payments not so required are made, certificates for the same amount will be called in and paid off.  *  *  *

" 4. The Company may for its own corporate account be the holder or pledgee of similar shares in said bond and mortgage."

After the issuance and sale of these certificates and between January 1, 1933, and March 1, 1933, the title company repurchased at full face value certificates amounting to $156,550 and canceled the same. Thereafter, and on April 24, 1935, the title company issued to itself a certificate for said sum of $156,550 which the title company continues to hold. This certificate was issued for the sole purpose of evidencing the amount of the interest or share which the title company at that time had in the mortgage.

The Mortgage Commission has received as interest upon the mortgage in question sums of money aggregating less than the amount of interest that is now due and has distributed such sums equally and ratably to holders of certificates other than the title company. The Mortgage Commission now holds $525.96 representing interest due upon the certificate held by the title company. The Mortgage Commission has refused to pay this sum to the title company.

The title company is also the owner and holder of record of a first consolidated mortgage dated November 19, 1931, having an unpaid principal amount of $300,000. Certificates representing undivided shares in this mortgage amounting to $279,250 were sold to purchasers by the title company. An unsold balance amounting to $20,750 remained in the possession of the title company. The title company repurchased from a certificate holder a certificate in the amount of $250. Thereafter, on April 24, 1935, the title company issued to itself a certificate in the amount of $21,000 which represented the unsold balance in the mortgage and the repurchased

certificate amounting to $250. The title company is now the owner and holder of this certificate. This certificate was also issued for the sole purpose of evidencing the amount of the interest which the title company at that time had in this mortgage. The Mortgage Commission now holds $488.91 which represents unpaid interest upon the certificate for $21,000 and has refused to pay this sum to the title company pending this litigation.

On this state of facts the following questions are submitted to this court for decision:

"A. In respect to the said mortgage hereinabove referred to in paragraphs ' Sixth ' to ' Ninth '· inclusive:

" 1. Is the Title Company now entitled to receive from the Mortgage Commission the said sum of $525.96?

" 2. Is the Title Company entitled to receive from the Mortgage Commission any payment of interest on said certificate No. 161320 for $156,550, at a time when there remains unpaid any sum due and owing to certificate holders other than the Title Company?

" B. In respect to the said mortgage hereinabove referred to in paragraphs ' Tenth ' to ' Thirteenth ' inclusive:

" 1. Is the Title Company now entitled to receive from the Mortgage Commission the said sum of $488.91?

" 2. Is the Title Company entitled to receive from the Mortgage Commission any payment of interest on said certificate No. 161569 for $21,000, at a time when there remains unpaid any sum due and owing to certificate holders other than the Title Company? "

The answer to these questions depends on whether the plaintiff is entitled to share *pro rata* with the assignees in the proceeds of the mortgage security or has subordinated its claims to those of its assignees.

The question thus presented has never been squarely passed on by the courts of this State. Priority in favor of assignees has been granted in cases where the assignor had itself guaranteed payment (*Matter of Lawyers Mortgage Co.* [*545 West End Ave.*], 157 Misc. 813; affd., 248 App. Div. 715; affd., 272 N. Y. 554); where there was an assignment to secure the payment of a debt (*Mechanics' Bank* v. *Bank of Niagara*, 9 Wend. 410); under circumstances where there was clear evidence of the intention of the parties that the assignee should have a priority (*Stafford* v. *Van Rensselaer*, 9 Cow. 316); and where there was some trust relationship established between the parties (*Fullerton* v. *National B. & T. Ins. Co.*, 100 N. Y. 76).

Priority was refused in *Granger* v. *Crouch* (86 N. Y. 494). This is the principal case relied on by the plaintiff. The facts in that

case, however, are so different from those here presented as to make the precedent entirely inapplicable. The court there had to determine rights not as between an assignee of an interest in the mortgage and his assignor but between the holders of two entirely separate mortgages recorded at the same time and covering a single piece of land. The transaction by which the assignee had acquired the mortgage held by him was not an ordinary sale. He had paid the amount of the mortgage at the instance of the mortgagor and taken an assignment from the mortgagee as security for the amount advanced. This distinction is clearly pointed out. The court in its opinion considered the rule to be applied where there was a single mortgage payable in installments, one of which, the first to mature, had been specifically assigned, and said: " In such a case, if the transaction were really a sale, or the payment of a conceded debt, there would be rational ground, out of the natural equity of the situation, to infer an intention that priority should be given." The court in its opinion also laid down the rule to be applied generally in the determination of controversies of this kind in the following language: " The decisive test in every case is the intention of the parties either as actually expressed, or as derived from the natural equity of the situation."

In the absence of any controlling decision in New York, counsel have invited the court's attention to decisions in other jurisdictions and to the conclusions of eminent text writers on the subject. These citations are not entirely in harmony. The majority, however, favor the rule which grants priority to the assignee of the partial interest. In Pomeroy's Equity Jurisprudence (Vol. 3 [4th ed.], § 1203) the rule is stated as follows: " When the mortgagee assigns one or more of the notes, and retains the remainder of the series, it is generally held that the assignee is entitled to a priority of lien as against the mortgagee with respect to the note or notes so transferred; and this rule operates without regard to the order in which the notes held by the two parties mature."

Among the cases outside of New York which have granted preference to assignees are: *Brewer* v. *Atkeison* (121 Ala. 410, 412; 25 So. 992); *Hand* v. *Kemp* (207 Ala. 309, 310; 92 So. 897); *Foley* v. *Rose* (123 Mass. 557, 558); *Lawson* v. *Warren* (34 Okla. 94; 124 Pac. 46); *Kuppenheimer* v. *Chicago Title & Trust Co.* (163 Ill. App. 127); *Parkhurst* v. *Watertown Steam Engine Co.* (107 Ind. 594, 597; 8 N. E. 635); *Anderson* v. *Sharp* (44 Ohio St. 260, 268; 6 N. E. 900); *Richardson* v. *McKim* (20 Kan. 346, 351); *Waterman* v. *Hunt* (2 R. I. 298); *Salzman* v. *His Creditors* (2 Rob. [La.] 241, 243); *McClintic* v. *Wise's Administrators* (25 Gratt. [Va.] 448); *Berry* v. *Van Hise* (148 Ga. 27; 95 S. E. 690).

The contrary conclusion was reached in *Kelly* v. *Middlesex Title Guarantee & Trust Co.* (115 N. J. Eq. 592; 171 A. 823; affd., 116 N. J. Eq. 574; 174 A. 706). We are unable to follow this decision because on its facts it grants a *pro rata* participation where the certificate had actually been guaranteed by the seller. This decision is in direct conflict with the decisions of this court and of the Court of Appeals in *Matter of Lawyers Mortgage Co.* (*545 West End Ave.*) (*supra*), and *Matter of New York Title & Mortgage Co.* (*Series FW-1 Certificates*) (155 Misc. 651; 157 id. 271; affd., 248 App. Div. 715; affd., 272 N. Y. 556).

To meet the test that the courts have laid down that in every case the intention of the parties if actually expressed will supersede any rule of law in favor of the assignee, the plaintiff argues that provision " 4 " of the certificate does indicate an intention that the company was to share *pro rata* as to any certificates which it might hold or acquire. The provision referred to reads as follows: " The Company may for its own corporate account be the holder or pledgee of similar shares in said bond and mortgage." We are unable to assent to an interpretation of provision " 4 " which would carry with it any such legal consequences as are urged by plaintiff. The certificates which were acquired by the company were not retained by it but were canceled. The existing certificates were issued by the company to itself some two years after the cancellation. They were " issued for the sole purpose of evidencing the amount of the interest " which the company then held in these mortgages. They were thus not " similar shares " within the meaning of provision " 4 " of the certificate because the shares in the hands of the public represent *bona fide* sales of assigned portions of the mortgage. The part of the mortgage retained unsold by the company was not a similar share. The purpose of provision " 4 " was not to permit the company to create similar shares by a fiction of issuing to itself a certificate as evidence to substantiate a claim of the kind herein made. It was rather intended to protect the company if the company became an investor and maintained its position as such without any merger of interests. The provisions of this paragraph, therefore, have no application to and confer no rights upon the company in connection with the ownership represented by such certificates.

Plaintiff finally argues that in the absence of any specific promise, at least the natural equities of the situation make it fitting and proper that there should be a *pro rata* distribution in this particular case. With this contention we are also unable to agree. The

natural equities of the situation are all with the defendant. The certificate offered the purchaser began with the statement printed in display type,

" Guaranteed by
Bond and Mortgage Guarantee Company
Issued by
Title Guarantee and Trust Company."

The guaranty which accompanied the mortgage was procured by the plaintiff and the defendant had no part in the selection of the guarantor. The purpose of this arrangement was to convey to the purchaser the seller's assurance that the certificate would be paid. To allow the seller, when this assurance has proven worthless and the security inadequate, to reduce the amount which the purchaser would receive by a *pro rata* distribution to itself would entirely disregard the " natural equities." It would put the parties at arm's length in the transaction on the underlying point as to the satisfactory condition of the guarantor, a matter on which the buyer was entirely without knowledge, while the seller was chargeable with full knowledge. The seller in effect has assured his purchaser that the guaranty is adequate for his protection. While the failure of this assurance may have no legal consequence between the parties, it does present equitable considerations which make it essential that the seller's right in the security should be postponed until the assurance has been made good. This cannot be accomplished by any *pro rata* distribution.

The four questions submitted to this court are answered in the negative. Judgment should be rendered in favor of the defendant without costs.

MARTIN, P. J., GLENNON and UNTERMYER, JJ., concur.

Judgment unanimously directed in favor of the defendant, without costs. Settle order on notice.